FILED
FT. SMITH DIST.

IN THE CIRCUIT COURT OF SEBASTIAN COUNTY, ARKANSAS
FORT SMITH DISTRICT
CIVIL DIVISION (  )

TRIBUILT CONSTRUCTION GROUP, LLC                    **PLAINTIFF**

v.                    Case No. CV-2010 - 540

INTERNATIONAL FIDELITY INSURANCE COMPANY        **DEFENDANT**

## COMPLAINT

COMES NOW the Plaintiff, TriBuilt Construction Group, LLC, by its attorneys C. Brian Meadors and Cody Thompson, and states:

1.    This is an action under Arkansas's Declaratory Judgment Act, Ark. Code Ann. § 16-111-101 *et seq.* No other cause of action is being pled.

2.    The Plaintiff is an Arkansas corporation based in the Fort Smith District of Sebastian County, Arkansas. The Defendant is an insurance company incorporated and headquartered in New Jersey. It can be served by sending the summons and complaint to Francis Louis Mitterhoff, President, Int'l Fid. Ins. Co., One Newark Center, Newark, NJ 07102-5207. The Defendant is subject to personal jurisdiction in Arkansas as it regularly does business here; it is subject to specific, personal jurisdiction in this matter because the contracts it executed concerned matters that arose in the State of Arkansas. Venue is proper in the Fort Smith District of Sebastian County, Arkansas, under Ark. Code Ann. § 16-55-213 (a)(3).

EXHIBIT A TO
NOTICE OF REMOVAL

3.     The Plaintiff is a general contractor. Plaintiff agreed to construct a hotel in Conway, Arkansas, for a company called NISHA. As part of that construction, the Plaintiff had to get various bonds. It obtained those bonds from the Defendant. A copy of the relevant portion of the Plaintiff-Defendant bonding contract(s) is attached as Exhibit A.

4.     At the end of the construction project, the Plaintiff demanded that NISHA's bank (as part of the original contractual fixed agreement) pay the remaining monies owed on the project (over $650k). NISHA and its bank refused to pay. This put the Plaintiff in a very difficult financial position and, having no other recourse, Plaintiff sued NISHA and NISHA's bank, demanding that the balance of the contract price be paid. That case is currently pending and is styled *TriBuilt v. NISHA and Centennial Bank, Sebastian County, Arkansas, CV-2009-2097 (I)*.

5.     The subcontractors began demanding money from the Plaintiff. But, because NISHA and NISHA's bank refused to make the final payments ($650k) owed on the construction project, the Plaintiff did not have the funds available to pay various subcontractors that had done work on the hotel. As a result and per NISHA's attorney's request, several of the subcontractors are making claims against Plaintiff's bonds (the bonds Plaintiff got from the Defendant).

6.     The lack of payment from NISHA's bank to the Plaintiff has handicapped the Plaintiff in another way. The Plaintiff does not have adequate cash flow to regularly pay its attorneys on an hourly basis. This cash flow problem would prevent Plaintiff

2

from hiring attorneys to pursue Plaintiff's rights against NISHA and NISHA's bank. In order to preserve its ability to recover the $650k owed, the Plaintiff requested that its attorneys shift to a contingency fee agreement so that Plaintiff could still pursue its remedies despite its cash flow difficulties.

7.     The Plaintiff and its attorneys tentatively agreed on a contingency fee of 24% of all monies recovered.

8.     Typically, in the legal industry, contingent fees are 33% to 40% of total recovery.

9.     The 24% arrangement is a lower percentage than the industry norm.

10.    The 24% proposed by Plaintiff's attorneys is less than the amount under the roughly analogous cases decided under Ark. Code Ann. section 11-9-410.

11.    The 24% proposed by Plaintiff's attorneys may well end up being less than what would be charged by attorneys handling the case on an hourly basis.

12.    If the Defendant bonding company properly pays subcontractors on behalf of the Plaintiff, then the Plaintiff will owe that amount to the Defendant bonding company. Indeed, the Defendant bonding company may claim a constructive trust on monies recovered in the *TriBuilt v. NISHA and Centennial Bank, Sebastian County, Arkansas*, CV-2009-2097 (I) litigation.

13.    Plaintiff's attorneys became concerned that the bonding company may demand that Plaintiff's attorneys personally disgorge a portion of the fees if the recovery were less than the amount owed to the Defendant bonding company. Having

3

already taken a risk on the case by agreeing to a reduced contingency fee, the Plaintiff's attorneys certainly did not want to have their fees further exposed to reduction by claims from the Defendant bonding company.

14.    Therefore, Plaintiff's attorneys sent a letter to the Defendant bonding company explaining the situation and asking for the Defendant bonding company's assurance that it would not impair Plaintiff's ability to hire attorneys and pursue its rights; it sought assurance that the Defendant bonding company would have no objection a 24% recovery. A copy of the letter to the Defendant bonding company is at Exhibit B.

15.    The Defendant bonding company refused. A copy of the back-and-forth is attached as Exhibit C. The Defendant bonding company wanted the 24% contingent fee reduced such that the attorneys' recovery of the first $114k would not be compensated at all. The Defendant bonding company also wanted the ability to back out of the agreement if third parties beyond Plaintiff's control were to sue the Defendant bonding company.

16.    There exists a dispute between the Plaintiff and Defendant that needs resolution. The issue here is, in the event that the net recovery is less than what is owed back to the bonding company, what amount is fair to compensate Plaintiff's attorneys for the recovery of monies from NISHA and NISHA's bank. This is addressed in Couch on Insurance 3d, section 223:89 n46 and the case it cites, *Gen. Exchange Ins. Corp. v. Driscoll*, 315 Mass. 360, 52 N.E.2d 970 (1944). Under that case, "The sum in equity and

4

good conscience due to the plaintiff [Subrogee insurance company] may well be less than that amount because of necessary and reasonable expenses and perhaps also attorney's fees, all of which it may be proper to allocate in just proportion to the sum recovered for property damage."

17.     The Court should find and declare that the 24% contingency arrangement proposed by the Plaintiff's attorneys is fair and reasonable under the doctrine of the "common fund doctrine," under industry standards, and under the duty of good faith and fair dealing under the Plaintiff and Defendant's bonding contract. The Court should find and declare that the Defendant's refusal to cooperate with the Plaintiff's efforts to recover monies owed on the construction project is being done in bad faith and in breach of the parties' contract.

Dated: March 19, 2010.

Respectfully submitted,

TRIBUILT CONSTRUCTION GROUP, LLC

Cody Thompson, Ark. Bar No. 97136
THE LAW OFFICES OF CODY THOMPSON
P.O. Box 10990; Fort Smith, AR 72917;
(479) 478-8282

C. Brian Meadors, Ark. Bar No. 2001186
PRYOR, ROBERTSON, BEASLEY& SMITH, PLLC
315 North 7th Street; P.O. Drawer 848
Fort Smith, AR 72902-0848
(479) 782-8813; (479) 785-0254 (fax)

# AGREEMENT OF INDEMNITY
# (GIA FORM I)

THIS AGREEMENT of Indemnity, made and entered into this _____6th_____

day of ___October_____, 20 _08_ by

Tribuilt Construction Group, L.L.C., 4931 Old Greenwood Road, Fort Smith, AR 72917

_____
(Insert full name and address of Contractor)

(hereinafter called the Contractor) and

Alan M. Harrison, 10113 Foxboro Rd., Fort Smith, AR 72903

Gaye P. Harrison, 10113 Foxboro Rd., Fort Smith, AR 72903

Joseph E. Marrone, 4631 N. Mountain Grove Rd., Alma, AR 72921

Stacy M. Marrone, 4631 N. Mountain Grove Rd., Alma, AR 72921

Southland Enterprises LLC, 4931 Old Greenwood Road, Fort Smith, AR 72917

_____
(Insert full names and addresses of Indemnitors, if any)

(hereinafter called the Indemnitors, if any) and

**INTERNATIONAL FIDELITY INSURANCE COMPANY,** One Newark Center, 20th Floor, Newark, NJ 07102 (hereinafter called the Surety),

## WITNESSETH:

WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as co-venturer with others, may desire, or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue or substitute the same from time to time; or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, may be desired or required, in renewal, continuation, extension or substitution thereof; any one or more of which are hereinafter called Bonds; or the Contractor or Indemnitors may request the surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor or the Surety may have already issued such Bonds in reliance upon execution of this Agreement; and

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling said Bonds.

NOW, THEREFORE, in consideration of the premises, the Contractor and Indemnitors for themselves, their subsidiaries and affiliates, heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

Ex. A
1 of 11

## PREMIUMS

FIRST: The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

## INDEMNITY

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. The Contractor and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss. The Surety shall have the right to use the deposit, or any portion thereof, in payment or settlement of any liability, loss, or expense for which the Contractor and Indemnitors would be obligated to indemnify the Surety under the provisions of this Agreement. If for any reason the Surety deems it necessary to increase its reserve to cover any possible additional liability or loss, the Contractor and Indemnitors shall deposit with the Surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such increase. The Surety shall have no obligation to invest or to provide a return on any such deposits.

The Surety may sell or realize upon any and all such collateral security, at public or private sale, with or without notice to the Contractor and Indemnitors, or by any other method permitted or applicable by law. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall mean honesty in fact and the absence of wilful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith.

The Surety is not a fiduciary and owes no fiduciary obligations to the Contractor and/or Indemnitors.

Payments not made by the Contractor or Indemnitors within 10 days after demand for such payment is made upon such party by the Surety shall bear interest at the maximum rate allowed by law, with such interest accruing the date payment was made by the Surety for which reimbursement is demanded.

The Contractor and Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against each other or each other's property until the Contractor/Indemnitors' obligations to the Surety under this Agreement have been satisfied in full.

Ex. A
2 of 11

No action or failure to act by the Surety shall constitute a waiver of any right, power, or remedy afforded if by this Agreement, at law, or otherwise, nor shall such action or inaction constitute approval of or acquiescence in any breach by the Contractor and/or Indemnitors, except as may be specifically agreed in writing.

The Contractor and Indemnitors also understand and agree that their obligations remain in full force and effect for any and all Bonds issued in reliance upon this Agreement, notwithstanding that the entity on whose behalf said Bonds were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

## ASSIGNMENT

THIRD:  The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each bonded contract to become effective as of the date of the bond covering such contract, but only in the event of (1) of any abandonment, repudiation, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds; or (2) any advice or notification to the Surety that it is unable to perform any contract or obligation without financial assistance from the Surety; or (3) of any breach of the provisions of any of the paragraphs of this Agreement; or (4) of a default in discharging such other indebtedness or liabilities when due; or (5) of any assignment by the Contractor for the benefit of creditors or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (6) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (7) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual: (a) All the rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the bonds, materials which may be in process of construction, in storage elsewhere, in transportation anywhere, or in the process of being manufactured; (c) All the rights, title and interest of the Contractor in and to all subcontracts and/or purchase orders let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of action, claims and demands whatsoever and the proceeds therefrom which the Contractor may have or acquire against any subcontractor, vendor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; against any owner, architect, engineer or accountant; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) all claims, causes of actions due, claimed or received on insurance policies, including but not limited to life insurance policies, builders' risk policies, fire policies and casualty policies, including premium refunds; (f) any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work; and (g) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest.

## TRUST FUND

FOURTH:  The Contractor, the Indemnitors hereby consenting, agrees that all monies due or to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or otherwise, for the benefit of persons performing labor or providing materials for projects covered by the Bonds and for payment of all obligations in connection with any such contract or contracts for which the Surety would be liable under any said Bond, which trust funds also inure to the benefit of the Surety for liability or loss it may have or may sustain under any said Bond, and further agrees to use such money for the purpose of performing the contract and discharging the obligations of the Bond and for no other purpose until the Bond is completely exonerated. If the Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the

Ex. A
3 of 11

trust funds. The Contractor shall, upon demand of the Surety and in implementation of the trust or trusts hereby created, open an account or accounts with a bank or similar depository designated by the Contractor and approved by the Surety, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received pursuant to said contract or contracts. Withdrawals from such accounts shall be by check or similar instrument signed by the Contractor and countersigned by a representative of the Surety. This Agreement and declaration shall constitute notice of such trust. Such trust or trusts shall terminate on the payment by Contractor or Indemnitors of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of 20 years from the date hereof, whichever shall first occur.

## UNIFORM COMMERCIAL CODE

FIFTH:  This Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.  A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under the Code.

This Security Agreement and Financing Statement shall secure payments made, and to be made, by the Surety hereunder and under the Bonds issued by the Surety that are not reimbursed to the Surety by the Contractor or Indemnitors and shall cover and attach to the following collateral:  all tangible or intangible personal property and fixtures owned by the Contractor and Indemnitors, wherever located or situated and whether now owned or hereafter acquired, including the personal property described in Paragraph Third, and shall cover proceeds from sale of covered property.

## TAKEOVER

SIXTH:  In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the U.S. Bankruptcy Code, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Code, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

## CHANGES

SEVENTH: The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors, to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Contractor and Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Contractor and Indemnitors.

Ex. A
4 of 11

## ADVANCES

**EIGHTH:** The Surety is authorized and empowered to guarantee loans, to advance or lend to the Contractor any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor. Nothing herein shall be construed to impose upon the Surety any obligation to use either its own funds, or collateral provided by anyone to fund the Contractor to complete any Contract or to loan it any money or credit. Such determination shall be at the sole discretion of the Surety.

## BOOKS AND RECORDS

**NINTH:** At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts. The Contractor and Indemnitors agree to execute, as requested by the Surety, any additional documents to cause the release of records and information authorized by this paragraph.

## DECLINE EXECUTION

**TENTH:** Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

## NOTICE OF EXECUTION

**ELEVENTH:** The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement; and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Contractor and the Indemnitors shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## HOMESTEAD

**TWELFTH:** The Contractor and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

Ex. A
S. of 11

## SETTLEMENTS

THIRTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall demonstrate to the Surety's satisfaction that there is a valid basis to dispute said claim, demand, suit or judgment, and shall in good faith request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

## SURETIES

FOURTEENTH: In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

FIFTEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

The Contractor and Indemnitors hereby consent and submit to personal jurisdiction in the courts of New Jersey with regard to claims and actions against them by the Surety hereunder and consent that any process necessary or proper for the initiation of any court action in New Jersey or for entry of judgment may be served upon them by certified and ordinary mail, addressed to them or to their attorneys, at their last known addresses.

The Contractor and Indemnitors furthermore hereby agree to submit to personal jurisdiction in any forum in which the Surety may be sued on an obligation for which the Contractor and Indemnitors have agreed to indemnify the Surety.

## OTHER RIGHTS

SIXTEENTH: All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise, any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of the Surety to pursue any remedy against any one or more of the Contractor and/or Indemnitors shall not release or waive any right against any other of the Contractor/Indemnitors.

The Surety is not required to exhaust its remedies or rights against the Contractor or to await receipt of any dividends from the legal representatives of the Contractor before asserting its rights under this Agreement against the Indemnitors.

The rights, powers and remedies given to the Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor and/or Indemnitors or others whether by terms of any other agreement, by operation of law or otherwise.

Ex. A
6 of 11

## OTHER INDEMNITY

SEVENTEENTH:  The Contractor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor or Indemnitors or others, it being expressly understood and agreed by the Contractor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## INVALIDITY

EIGHTEENTH:  In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.  It is understood and agreed by the Contractor and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.  If any part of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such part was omitted.

## ATTORNEY IN FACT

NINETEENTH:  The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights granted, assigned, and/or transferred to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within rights granted, assigned and/or transferred, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement.  The Contractor and Indemnitors hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as such attorney-in-fact.

## NOTICE

TWENTIETH:  Upon becoming aware of any demand, notice, or proceeding preliminary to fixing any liability with which the Surety may be subsequently charged under any Bond, the Contractor and Indemnitors shall immediately notify the Surety in a writing delivered at its Home Office, One Newark Center, 20th Floor, Newark, New Jersey 07102 to the attention of the Claims Department.  The Surety reserves the right to change periodically the address for delivery of notification by the Surety's written direction delivered to the Contractor and Indemnitors.

Any notification by the Surety to any one individual or entity comprising the Contractor and Indemnitors shall constitute notice to the remaining individuals and entities comprising the Contractor and Indemnitors.

## TERMINATION

TWENTY-FIRST:  This Agreement may be terminated by the Contractor or Indemnitors upon twenty days' written notice sent by certified or registered mail to the Surety at its home office at One Newark Center, 20th Floor, Newark, New Jersey 07102, but any such notice of termination shall not operate to modify, bar, or discharge the Contractor or the Indemnitors from their obligations under this Agreement as to the Bonds that may have been theretofore executed or executed pursuant to Consent of Surety issued prior to notice of termination or with respect to Bonds executed after the date of such termination (i) upon the award of a contract to the Contractor on a bid or proposal with respect to which the Surety has executed a bid or proposal bond or similar undertaking prior to such date, or (ii) which the Surety has become obligated, prior to such date, to execute.  Further, such notice of termination shall operate only with respect to those parties upon whose behalf such notice of termination shall have been given.

Ex. A
7 of 11

## AMENDMENTS

TWENTY-SECOND: This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

## SUBSEQUENT EXECUTION

TWENTY-THIRD:  The Contractor and Indemnitors waive any defense that this instrument was executed subsequent to the date of any Bond, admitting and covenanting that such Bond was executed pursuant to the request of the Contractor/Indemnitors, and in reliance upon the Contractor/Indemnitor's promise to execute this document.

## CROSS-INDEMNITY

TWENTY-FOURTH:  In the event that more than one party executes this Agreement as "Contractor", and the Surety sustains any loss with respect to one or more of the parties identified as "Contractor", all parties executing this Agreement as either "Contractor", or "Indemnitors", or both, shall be jointly and severally liable to the Surety for such loss in accordance with the terms of this Agreement.

## REPRESENTATIONS

TWENTY-FIFTH: The undersigned represent to the Surety that they have carefully read the entire Agreement and that there are no other agreements or understandings which in any way lessen or modify the obligations set forth herein.  The undersigned further warrant and represent to the Surety that all necessary action has been taken by them to authorize the execution and delivery of this Agreement.

## UNIFORM ELECTRONIC TRANSACTIONS ACT

TWENTY-SIXTH: The undersigned agree that this document and any and all bonds issued by the Surety will be subject to the terms of the Uniform Electronic Transactions Act ("UETA"), to the extent that the UETA has been adopted by the State legislature in the relevant jurisdiction, and any and all substantially similar federal or state legislation designed to regulate electronic commerce.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

**WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY.  THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.**

WITNESS:    following signature(s) and seal(s) this 6th        day of  October                    , 20  08     .

IMPORTANT: To all indemnitors: please provide your Social Security Number (Individual) or your Federal Tax ID Number (Corporation).  The signature of each and every party to this instrument must be witnessed by at least one disinterested person.

Ex. A
8 of 11

PAGE 9 OF GIA FORM I BETWEEN INTERNATIONAL FIDELITY AS SURETY AND TRIBUILT CONSTRUCTION GROUP, LLC, AS CONTRACTOR ET AL.

**CONTRACTORS - (Limited Liability Company Signatories)**

Witness' signature _____

Brian Thomas
(Print or Type Name)

Tribuilt Construction Group, L.L.C.
Name of Limited Liability Company

Member's Signature _____

Alan M. Harrison, Managing Member
(Print or Type Name and Title)

Federal Tax ID _____

S.S. # 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

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF Arkansas
COUNTY OF Sebastian    s.s.

On This 6th day of October, in the year 20 08 before me personally come(s)

Alan M. Harrison, Managing Member.

a member of the Limited Liability Company of    Tribuilt Construction Group, L.L.C.
to me known and known to me to be the person who is described in and who executed the foregoing instrument and acknowledges to me that
he/she executed the same as and for the act and deed of the said Limited Liability Company.

_____
(Signature and title of official taking acknowledgment/ Notary)

ROBIN R. STOUT
MY COMM. EXP.
03-15-2016
NOTARY
PUBLIC
#12347176
SEBASTIAN CO., ARKANSAS

**INDEMNITORS - (Individual Signatories)**

Witness' signature _____                                    (Individually)

Brian Thomas
(Print or Type Name)

Phone Number 479-648-8850

Alan M. Harrison
(Print or Type Name )                                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
                                                     (S.S #)

10113 Foxboro Rd., Fort Smith, AR 72903
Home Address

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF Arkansas
COUNTY OF Sebastian    s.s.

On This 6th day of October, in the year 20 08 before me personally come(s)

Alan M. Harrison
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledges(s)
to me that he/she executed the same.

_____
(Signature and title of official taking acknowledgment/ Notary)

ROBIN R. STOUT
MY COMM. EXP.
03-15-2016
NOTARY
PUBLIC
#12347176
SEBASTIAN CO., ARKANSAS

IFICDOC 1.5                                                            Page 9 of 11

Ex. A
9 of 11

PAGE 10 OF GIA FORM I BETWEEN INTERNATIONAL FIDELITY AS SURETY AND TRUBUILT CONSTRUCTION GROUP, L.L.C. AS CONTRACTOR ET AL.

INDEMNITORS - (Individual Signatories)

Witness' signature _____

_____ (Individually)
Gaye P. Harrison

Brian Thomas
(Print or Type Name)

Gaye P. Harrison
(Print or Type Name )

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
(S.S #)

Phone Number   479-648-3150

10113 Foxboro Rd., Fort Smith, AR 72903
Home Address

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF Arkansas
COUNTY OF Sebastian   S.S.

On This 6th day of October , in the year 20 08 before me personally come(s)

Gaye P. Harrison

to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s)
to me that he/she executed the same.

_____
(Signature and title of official taking acknowledgment/ Notary)

ROBIN R. STOUT
MY COMM. EXP.
03-15-2016
NOTARY
PUBLIC
#12347176
SEBASTIAN CO., ARKANSAS

INDEMNITORS - (Individual Signatories)

Witness' signature _____

_____ (Individually)
Joseph E. Marrone

Brian Thomas
(Print or Type Name)

Joseph E. Marrone
(Print or Type Name )

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
(S.S #)

Phone Number   479-648-8850

4631 N Mountain Grove Rd., Alma, AR 72921
Home Address

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF Arkansas
COUNTY OF Sebastian   S.S;

On This 6th day of October , in the year 20 08 before me personally come(s)

Joseph E. Marrone

to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s)
to me that he/she executed the same.

ROBIN R. STOUT
MY COMM. EXP.
03-15-2016
NOTARY
PUBLIC
#12347176
SEBASTIAN CO., ARKANSAS

_____
(Signature and title of official taking acknowledgment/ Notary)

JFICDOC 1.5

Page 10 of 11

Ex A
10 of 11

PAGE 11 OF GIA FORM I BETWEEN INTERNATIONAL FIDELITY AS SURETY AND TRIBUILT CONSTRUCTION GROUP, L.L.C. AS CONTRACTOR ET AL.

**INDEMNITORS - (Individual Signatories)**

Witness' signature _____

_____     (Individually)
(Print or Type Name)

Stacy M. Marrone                        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
(Print or Type Name )                   (S.S #)

Phone Number   479 - 648 - 8800         4631 N. Mountain Grove Rd., Alma, AR 72921
                                        Home Address

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF Arkansas
COUNTY OF Christian          s.s.

On This  6th  day of  October  , in the year 20  08  before me personally come(s)

Stacy M. Marrone
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s)
to me that he/she executed the same.

_____
(Signature and title of official taking acknowledgement/ Notary)

[Notary Seal: ROBIN R. STOUT / MY COMM. EXP. 03-16-2016 / NOTARY PUBLIC / #12347176 / SEBASTIAN CO., ARKANSAS]

---

**INDEMNITORS - (Limited Liability Company Signatories)**

                                        Southland Enterprises LLC
                                        Name of Limited Liability Company

Witness' signature _____     Member's Signature _____

_____        Alan M. Harrison, Managing Member
(Print or Type Name)                     (Print or Type Name and Title)

                                        Federal Tax ID   20 - 3814148

                                        S.S. #   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

---

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF Arkansas
COUNTY OF Christian          s.s.

On This  6th  day of  October  , in the year 20  08  before me personally come(s)

Alan M. Harrison, Managing Member

a member of the Limited Liability Company of       Southland Enterprises LLC
to me known and known to me to be the person who is described in and who executed the foregoing instrument and acknowledges to me that
he/she executed the same as and for the act and deed of the said Limited Liability Company.

_____
(Signature and title of official taking acknowledgement/ Notary)

[Notary Seal: ROBIN R. STOUT / MY COMM. EXP. 03-16-2016 / NOTARY PUBLIC / #12347176 / SEBASTIAN CO., ARKANSAS]

IFICDOC 1.5                                          Page 11 of 11

Ex. A
11 of 11

# PRYOR, ROBERTSON, BEASLEY & SMITH, PLLC

### ATTORNEYS AT LAW
315 NORTH SEVENTH STREET
P.O. DRAWER 848
FORT SMITH, ARKANSAS 72902-0848
www.prbslaw.com

*OF COUNSEL*

THOMAS E. ROBERTSON, JR
JOHN R. BEASLEY
GREGORY G. SMITH†
KENNETH W. COWAN††
C. BRIAN MEADORS, P.A.††††
MARK E. FORD †††
AMANDA M. THOMAS

THOMAS B. PRYOR, P.A.

THOMAS R. PRYOR (1889-1952)
THOMAS B. PRYOR JR. (1904-1953)
G. BYRON DOBBS (1907-1976)
OWEN C. PEARCE (1917-1976)
DONALD P. CALLAWAY (1935-1984)

TELEPHONE (479) 782-8813
FAX (479) 785-0254
SENDER'S E-MAIL: cbmeadors@prbslaw.com

VIA EMAIL
re-sent February 23, 2010

Genise W. Teich
International Fidelity Insurance Company
Senior Managing Claims Counsel
One Newark Center, 20th floor
Newark, New Jersey 07102

re:    TriBuilt Construction Group LLC
       Bond LRIFSU0361509-00, old bond LR036150908
       TriBuilt v. NISHA and Centennial Bank, CV 2009-2097, Sebastian County, AR
       PRBS File No. 176,432

Dear Ms. Teich:

This letter follows up my Thursday, February 11, 2010, phone conversation with you. Thank you for speaking with me.

I represent TriBuilt. As you know, TriBuilt constructed a hotel in Conway, Arkansas, for an owner called NISHA. TriBuilt received payment and performance bonds from International Fidelity for this construction.

My understanding is that some of the subcontractors have made claims against the bonds. I do not know if those claims have been paid or not.

NISHA has failed to pay TriBuilt the monies that TriBuilt is owed, and it is a substantial amount. The total exceeds $650k. TriBuilt is suing NISHA (and the Bank that made the loan to NISHA) for these monies, and hired me (and another attorney, Cody Thompson) to do so.

---

Ex. 3
1 of 2

Mr. Thompson's and my fee arrangement with TriBuilt is a contingency arrangement. Our fee will be 24% of the recovery (be it a recovery in the form of payments to TriBuilt or payments to claimants from the job) less costs, with the balance being paid to TriBuilt.

I am writing because of my concern regarding a possible subrogation claim by International Fidelity. To the extent that monies are recovered on TriBuilt's behalf and paid to TriBuilt, it is my position that International Fidelity can make an appropriate claim for reimbursement from those monies. However, if International Fidelity's claim exceeds the net amount recovered for and paid to TriBuilt, then any such claim cannot affect the attorney fee.

An example will show this best. Suppose that International Fidelity properly pays $350k to various claimants. In the lawsuit, TriBuilt recovers $400k. Of that, Mr. Thompson's and my fees and costs are $100k, leaving a $300k balance to be paid to TriBuilt. International Fidelity's subrogation interest would allow it to intercept and receive the $300k that would have been paid to TriBuilt. However, that would leave a $50k shortfall from International Fidelity's perspective. It is my position that the $50k shortfall cannot be paid from the attorney fee award; the attorney fee award, in its entirety, would go to the attorneys.

Time is of the essence in resolving Mr. Thompson's and my concerns; Mr. Thompson and I are proceeding forward in the litigation against NISHA and the Bank and continue to invest substantial time in the case. If we do not hear from you to the contrary in the next ten business days, we will assume that any subrogation claim that International Fidelity has does not include a claim on our fee. If you disagree, please tell me.

Also, in the event you disagree, please suggest an arrangement whereby Mr. Thompson and I can continue to protect your insured's interest by continuing the litigation.

Thank you for consideration.

C. Brian Meadors.

Ex. B
2 of 2

| From: | "Jack East III" <jeastiii@windstream.net> |
|---|---|
| To: | <cbmeadors@prbslaw.com> |
| Date: | 3/2/2010 9:44 AM |
| Subject: | FW: TriBuilt Construction Group and International Fidelity Insurance Company |

Mr. Meadors,

See below. I got your email address wrong.

Jack East III

2725 Cantrell Rd., Ste. 202

Little Rock, AR 72202

501.372.3278

501.376.0949(fax)

From: Jack East III [mailto:jeastiii@windstream.net]
Sent: Tuesday, March 02, 2010 9:19 AM
To: 'chmeadors@prbslaw.com'
Cc: 'GTeich@ific.com'
Subject: TriBuilt Construction Group and International Fidelity Insurance
Company

Dear Mr. Meadors,

I represent International Fidelity Insurance Company(IFIC) in connection
with your letter request dated February 23, 2010 addressed to Genise Teich.
I tried to contact you this morning by phone but you were not available.
IFIC respectfully requests more information about the litigation between
TriBuilt, NISHA and Centennial Bank. IFIC is very much interested in working
out an arrangement to allow you to pursue TriBuilt's claims, but at the same
time protecting the interests of IFIC and unpaid project subcontractors and
suppliers who may have claims against IFIC's bonds.

When you have a chance to do so, please call me at the number below. At this
time IFIC reserves all rights and defenses. Nothing in this email should be
considered as any kind of admission or waiver.

Jack East III

Ex. C
1 of 26

2725 Cantrell Rd., Ste. 202

Little Rock, AR 72202

501.372.3278

501.376.0949(fax)

Ex. C
2 of 26

**From:**       Brian Meadors
**To:**         Jack East III
**CC:**         Cody Thompson
**Date:**       3/4/2010 4:23 PM
**Subject:**    IFIC / TriBuilt
**Attachments:** 20100304161816722.pdf

Jack,
  Attached is a scan of the letter that I am snail-mailing to you today.

$E_x. C$
$3 \text{ of } 26$

## PRYOR, ROBERTSON, BEASLEY & SMITH, PLLC

### ATTORNEYS AT LAW
315 NORTH SEVENTH STREET
P.O. DRAWER 848
FORT SMITH, ARKANSAS 72902-0848
www.prbslaw.com

THOMAS E. ROBERTSON, JR
JOHN R. BEASLEY
GREGORY G. SMITH†
KENNETH W. COWAN††
C. BRIAN MEADORS, P.A.†††††
MARK E. FORD †††
AMANDA M. THOMAS

*OF COUNSEL*

THOMAS B. PRYOR, P.A.

THOMAS PRYOR (1882-1952)
THOMAS B. PRYOR JR. (1904-1953)
G. BYRON DOBBS (1907-1976)
OWEN C. PEARCE (1917-1976)
DONALD P. CALLAWAY (1935-1984)

TELEPHONE (479) 782-8813
FAX (479) 785-0254
SENDER'S E-MAIL: cbmeadors@prbslaw.com

March 4, 2010

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202

Re:   TriBuilt Construction Group, LLC v. NISHA, LLC and
Centennial Bank f/k/a Community Bank
Sebastian County Circuit Court, Fort Smith District
Case No. CV-2009-20979 (I),     PRBS File No. 176,432

Dear Jack:

This letter follows up our recent phone call. We had discussed my February 23, 2010, letter to Genise Teich. You represent International Fidelity Insurance Company; I represent TriBuilt.

At the conclusion of your phone call, it was my understanding that IFIC was in agreement with my February 23, 2010, letter, but for the sake of clarity you had asked me to send you a letter detailing how any distributions of monies received would be handled.

As we discussed, "monies received," means any monies that are paid by the Bank or by NISHA to my client and/or a subcontractor.

From those distributions, my firm (and my co-counsel, Cody Thompson) are entitled to 24% as our attorney's fees. Costs (e.g., postage, copies, out-of-pocket expenses) will be deducted.

Of the balance, IFIC is next in line and is entitled to be reimbursed any monies that it had to pay pursuant to any of the bonds.

If, after payments to IFIC, any money remains, it will be paid to TriBuilt.

---

† Also Licensed in California
†† Also Licensed in Oklahoma
††† Also Licensed in Nebraska
†††† Also Licensed in Missouri, Florida, Nevada, Virginia, and Washington, DC

Ex. C
4 of 26

March 4, 2010
Jack East
Page Two

IFIC is in no way liable to my firm or Mr. Thompson for any fees; we represent TriBuilt. IFIC agrees that if, under the distribution plan above, there is not enough money to pay all of IFIC's claims, then IFIC's remedy will be to seek the difference from TriBuilt; IFIC will not make any claim on the monies designated for attorney's fees.

I hope this accurately sets forth our understanding. Please tell me if it does not.

Finally, you had asked for a copy of the pleadings. I scanned them onto the enclosed disk.

Sincerely,

PRYOR, ROBERTSON, BEASLEY
& SMITH, PLLC

C. Brian Meadors

CBM:dmc

Enclosure

cc:    TriBuilt Construction (w/out enc.)

Ex. C
S. p 26

**From:**      "Jack East III" <jeastiii@windstream.net>
**To:**        "'Brian Meadors'" <BMeadors@prbslaw.com>
**CC:**        <GTeich@ific.com>
**Date:**      3/8/2010 10:23 AM
**Subject:**   RE: IFIC / TriBuilt

Brian,

I don't believe the letter exactly represents our understanding. I need to
review the documents on the CD before I commit to anything firm. And if IFIC
becomes embroiled in the suit or arbitration it will require reimbursement
of the litigation/arbitration expenses as they are incurred. Also, You and
your client must understand that IFIC reserves all rights to recover all
loss, cost and expense from TriBuilt or any other responsible party,
including individual indemnitors. Lastly, while I did not specifically
mention this in our conversation, IFIC expects full cooperation from
TriBuilt in the investigation and adjustment of the bond claims. Should
Genise work through you, or should she contact TriBuilt directly about the
claims?

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)

-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Thursday, March 04, 2010 4:23 PM
To: jeastiii@windstream.net
Cc: Cody Thompson
Subject: IFIC / TriBuilt

Jack,
  Attached is a scan of the letter that I am snail-mailing to you today.

Ex. C
6 of 26

**From:**     Brian Meadors
**To:**       Jack East III
**CC:**       Cody Thompson;  GTeich@ific.com
**Date:**     3/10/2010 5:08 PM
**Subject:**  RE: IFIC / TriBuilt

Genise should contact TriBuilt directly regarding claims.
As for documentation setting forth our understanding, please make whatever edits you like to my letter and then send it to me for my review. I would like to get the fee issue resolved by next week.  Thanks.

>>> "Jack East III" <jeastiii@windstream.net> 3/8/2010 10:23 AM >>>
Brian,

I don't believe the letter exactly represents our understanding. I need to review the documents on the CD before I commit to anything firm. And if IFIC becomes embroiled in the suit or arbitration it will require reimbursement of the litigation/arbitration expenses as they are incurred. Also, You and your client must understand that IFIC reserves all rights to recover all loss, cost and expense from TriBuilt or any other responsible party, including individual indemnitors. Lastly, while I did not specifically mention this in our conversation, IFIC expects full cooperation from TriBuilt in the investigation and adjustment of the bond claims. Should Genise work through you, or should she contact TriBuilt directly about the claims?

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)

-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Thursday, March 04, 2010 4:23 PM
To: jeastiii@windstream.net
Cc: Cody Thompson
Subject: IFIC / TriBuilt

Jack,
 Attached is a scan of the letter that I am snail-mailing to you today.

Ex. C
7 of 26

| | |
|---|---|
| **From:** | "Jack East III" <jeastiii@windstream.net> |
| **To:** | "'Brian Meadors'" <BMeadors@prbslaw.com> |
| **Date:** | 3/11/2010 7:41 AM |
| **Subject:** | RE: IFIC / TriBuilt |

Good Morning Brian,

I indicated my client was willing to work with you to allow TriBuilt to pursue its claim and for you to make a fee. Please further recall, however, that I wanted to review the relevant pleadings first. You sent me some court pleadings on a CD. Arbitration pleadings were included.

I also indicated to you that my client expected to recover any loss it may suffer from someone, whether that be TriBuilt, its owners or the contract balance in NISHA's hands. Before there can be any agreement or understanding of any kind between IFIC, TriBuilt, its attorneys and its owners you must indicate how that will happen. After all, TriBuilt and its owners have already promised IFIC in the General Agreement of Indemnity to hold IFIC harmless from all loss, cost and expense, including attorney fees, arising out of any bonds issued by IFIC for TriBuilt.

In reviewing the Arbitration pleadings and in discussing the matter with Mr. Overton and Mr. Stuart I have learned there is an Owner/Obligee claim for liquidated damages against the retainage of $144,000. I also have been told that some subcontractor and supplier claims have been paid from retainage. That leads me to believe the amount due TriBuilt as retainage is substantially less than the amount claimed. Is this true? Has any retainage been paid to TriBuilt's subcontractors and suppliers? If so, how much was paid and to whom? Was there any dispute about those paid claims?

Please promptly respond with TriBuilt's proposals and answers to the above questions so that IFIC may work with you to resolve all bond, subrogation and indemnity issues. Needless to say, IFIC reserves all rights and defenses. Nothing contained herein or in prior or future conversations is intended to be any kind of waiver or admission.

Lastly, I would again urge TriBuilt to furnish Genise Teich with information she needs to investigate the bond claims.

Sincerely,

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)

-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Wednesday, March 10, 2010 5:08 PM
To: Jack East III
Cc: Cody Thompson; GTeich@ific.com
Subject: RE: IFIC / TriBuilt

Genise should contact TriBuilt directly regarding claims.
As for documentation setting forth our understanding, please make whatever edits you like to my letter and then send it to me for my review. I would like to get the fee issue resolved by next week. Thanks.

Ex. C
8 of 26

>>> "Jack East III" <jeastiii@windstream.net> 3/8/2010 10:23 AM >>>
Brian,

I don't believe the letter exactly represents our understanding. I need to
review the documents on the CD before I commit to anything firm. And if IFIC
becomes embroiled in the suit or arbitration it will require reimbursement
of the litigation/arbitration expenses as they are incurred. Also, You and
your client must understand that IFIC reserves all rights to recover all
loss, cost and expense from TriBuilt or any other responsible party,
including individual indemnitors. Lastly, while I did not specifically
mention this in our conversation, IFIC expects full cooperation from
TriBuilt in the investigation and adjustment of the bond claims. Should
Genise work through you, or should she contact TriBuilt directly about the
claims?

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)

-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Thursday, March 04, 2010 4:23 PM
To: jeastiii@windstream.net
Cc: Cody Thompson
Subject: IFIC / TriBuilt

Jack,
   Attached is a scan of the letter that I am snail-mailing to you today.

Ex. C
9 of 26

From:      "Jack East III" <jeastiii@windstream.net>
To:        "'Brian Meadors'" <BMeadors@prbslaw.com>
Date:      3/16/2010 11:13 AM
Subject:   IFIC and TriBuilt

Brian,

I wanted to put this in writing rather than a phone call conversation.
International Fidelity Insurance Company(IFIC) proposes the following:

(1) TriBuilt litigation and arbitration to proceed with you as its counsel.
IFIC will not object to your fee of 24% of the gross amount of any recovery
except the undisputed balance of the retainage. That means you get 24% of
any tort recovery in the litigation plus 24% of any change order recovery in
the arbitration plus 24% of any recovery of the liquidated damages being
asserted by NISHA. (I understand NISHA asserts it is entitled to keep
$144,000.00 of the contract balance as liquidated damages.) "Gross amount"
means the total amount recovered, including attorney fees awarded in the
arbitration, but excluding arbitrator and AAA costs and expenses.

(2) After subtracting your fees and expenses all remaining amounts recovered
in court or the arbitration would then be paid, to the extent necessary, to
either the unpaid subcontractors and suppliers of TriBuilt on the NISHA job,
or to IFIC to the extent of its payments to TriBuilt's subcontractors,
suppliers and other bond claimants on the NISHA project or any other IFIC
bonded project on which IFIC suffers a bond loss or losses.

(3) Lastly, but most importantly, a condition of this proposal is that IFIC
be kept out of the court suit and arbitration. Should IFIC be made a party
to either the suit or arbitration this agreement will be null and void. I
think this should be resolved soon in the arbitration. (I also think the
risk of joinder of IFIC in the arbitration proceeding is minimal since the
payment bonds I have seen mandate court proceedings rather than arbitration,
however, I have not seen the performance bonds.)

Please consider the above and let me know your response. Needless to say,
IFIC reserves all right to seek recovery of any and all loss, cost or
expense from TriBuilt. The foregoing proposal is an effort to address the
recovery in the pending litigation and arbitration you are handling only.

Jack East III

2725 Cantrell Rd., Ste. 202

Little Rock, AR 72202

501.372.3278

Ex. C
10 of 26

501.376.0949(fax)

Ex. C
11 of 2

| | |
|---|---|
| **From:** | Brian Meadors |
| **To:** | Jack East III |
| **CC:** | Cody Thompson |
| **Date:** | 3/16/2010 11:21 AM |
| **Subject:** | Re: IFIC and TriBuilt |

Jack,
  What do you mean by "undisputed balance of the retainage"?  I ask because my client's don't have any of the retainage, so if it is undisputed, I don't understand why we're having to sue for it.
  I have other issues with IFIC's proposal, but will address those later after I receive this clarification.

>>> "Jack East III" <jeastiii@windstream.net> 3/16/2010 11:13 AM >>>
Brian,


I wanted to put this in writing rather than a phone call conversation.
International Fidelity Insurance Company(IFIC) proposes the following:


(1) TriBuilt litigation and arbitration to proceed with you as its counsel.
IFIC will not object to your fee of 24% of the gross amount of any recovery
except the undisputed balance of the retainage. That means you get 24% of
any tort recovery in the litigation plus 24% of any change order recovery in
the arbitration plus 24% of any recovery of the liquidated damages being
asserted by NISHA. (I understand NISHA asserts it is entitled to keep
$144,000.00 of the contract balance as liquidated damages.) "Gross amount"
means the total amount recovered, including attorney fees awarded in the
arbitration, but excluding arbitrator and AAA costs and expenses.

(2) After subtracting your fees and expenses all remaining amounts recovered
in court or the arbitration would then be paid, to the extent necessary, to
either the unpaid subcontractors and suppliers of TriBuilt on the NISHA job,
or to IFIC to the extent of its payments to TriBuilt's subcontractors,
suppliers and other bond claimants on the NISHA project or any other IFIC
bonded project on which IFIC suffers a bond loss or losses.

(3) Lastly, but most importantly, a condition of this proposal is that IFIC
be kept out of the court suit and arbitration. Should IFIC be made a party
to either the suit or arbitration this agreement will be null and void. I
think this should be resolved soon in the arbitration.  (I also think the
risk of joinder of IFIC in the arbitration proceeding is minimal since the
payment bonds I have seen mandate court proceedings rather than arbitration,
however, I have not seen the performance bonds.)


Please consider the above and let me know your response. Needless to say,
IFIC reserves all right to seek recovery of any and all loss, cost or
expense from TriBuilt. The foregoing proposal is an effort to address the
recovery in the pending litigation and arbitration you are handling only.


Jack East III

Ex. C
12 of 26

2725 Cantrell Rd., Ste. 202

Little Rock, AR 72202

501.372.3278

501.376.0949(fax)

Ex. C
13 of 26

| | |
|---|---|
| **From:** | "Jack East III" <jeastiii@windstream.net> |
| **To:** | "'Brian Meadors'" <BMeadors@prbslaw.com> |
| **CC:** | "'Cody Thompson'" <codythompson@hotmail.com> |
| **Date:** | 3/16/2010 11:56 AM |
| **Subject:** | RE: IFIC and TriBuilt |

The undisputed retainage is the contract balance in NISHA's hands after subtracting liquidated damages from the total retainage. My notes reflect NISHA has $258,000 in retainage. The "undisputed" retainage would, therefore, be $114,000. This amount would be paid by NISHA to someone, regardless of the outcome of the contract disputes between the parties.

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)

-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Tuesday, March 16, 2010 11:22 AM
To: Jack East III
Cc: Cody Thompson
Subject: Re: IFIC and TriBuilt

Jack,
  What do you mean by "undisputed balance of the retainage"?  I ask because my client's don't have any of the retainage, so if it is undisputed, I don't understand why we're having to sue for it.
  I have other issues with IFIC's proposal, but will address those later after I receive this clarification.

>>> "Jack East III" <jeastiii@windstream.net> 3/16/2010 11:13 AM >>>
Brian,


I wanted to put this in writing rather than a phone call conversation.
International Fidelity Insurance Company(IFIC) proposes the following:


(1) TriBuilt litigation and arbitration to proceed with you as its counsel.
IFIC will not object to your fee of 24% of the gross amount of any recovery except the undisputed balance of the retainage. That means you get 24% of any tort recovery in the litigation plus 24% of any change order recovery in the arbitration plus 24% of any recovery of the liquidated damages being asserted by NISHA. (I understand NISHA asserts it is entitled to keep $144,000.00 of the contract balance as liquidated damages.) "Gross amount" means the total amount recovered, including attorney fees awarded in the arbitration, but excluding arbitrator and AAA costs and expenses.

(2) After subtracting your fees and expenses all remaining amounts recovered in court or the arbitration would then be paid, to the extent necessary, to either the unpaid subcontractors and suppliers of TriBuilt on the NISHA job, or to IFIC to the extent of its payments to TriBuilt's subcontractors,

Ex. C
14 of 26

suppliers and other bond claimants on the NISHA project or any other IFIC
bonded project on which IFIC suffers a bond loss or losses.

(3) Lastly, but most importantly, a condition of this proposal is that IFIC
be kept out of the court suit and arbitration. Should IFIC be made a party
to either the suit or arbitration this agreement will be null and void. I
think this should be resolved soon in the arbitration.  (I also think the
risk of joinder of IFIC in the arbitration proceeding is minimal since the
payment bonds I have seen mandate court proceedings rather than arbitration,
however, I have not seen the performance bonds.)


Please consider the above and let me know your response. Needless to say,
IFIC reserves all right to seek recovery of any and all loss, cost or
expense from TriBuilt. The foregoing proposal is an effort to address the
recovery in the pending litigation and arbitration you are handling only.


Jack East III

2725 Cantrell Rd., Ste. 202

Little Rock, AR 72202

501.372.3278

501.376.0949(fax)

Ex. C
15 of 26

| | |
|---|---|
| **From:** | Brian Meadors |
| **To:** | Jack East III |
| **CC:** | Cody Thompson |
| **Date:** | 3/16/2010 11:33 AM |
| **Subject:** | another clarification - IFIC and TriBuilt |

Is there a particular portion of the policy(ies) that IFIC has with TriBuilt that allows IFIC to control or dictate terms regarding TriBuilt's relationship with TriBuilt's attorneys? In other words, on what authority is IFIC making these demands? If you could forward me that authority / policy language, it would be helpful in allowing us to respond to your client's proposal.

>>> "Jack East III" <jeastiii@windstream.net> 3/16/2010 11:13 AM >>>
Brian,

I wanted to put this in writing rather than a phone call conversation.
International Fidelity Insurance Company(IFIC) proposes the following:

(1) TriBuilt litigation and arbitration to proceed with you as its counsel.
IFIC will not object to your fee of 24% of the gross amount of any recovery
except the undisputed balance of the retainage. That means you get 24% of
any tort recovery in the litigation plus 24% of any change order recovery in
the arbitration plus 24% of any recovery of the liquidated damages being
asserted by NISHA. (I understand NISHA asserts it is entitled to keep
$144,000.00 of the contract balance as liquidated damages.) "Gross amount"
means the total amount recovered, including attorney fees awarded in the
arbitration, but excluding arbitrator and AAA costs and expenses.

(2) After subtracting your fees and expenses all remaining amounts recovered
in court or the arbitration would then be paid, to the extent necessary, to
either the unpaid subcontractors and suppliers of TriBuilt on the NISHA job,
or to IFIC to the extent of its payments to TriBuilt's subcontractors,
suppliers and other bond claimants on the NISHA project or any other IFIC
bonded project on which IFIC suffers a bond loss or losses.

(3) Lastly, but most importantly, a condition of this proposal is that IFIC
be kept out of the court suit and arbitration. Should IFIC be made a party
to either the suit or arbitration this agreement will be null and void. I
think this should be resolved soon in the arbitration. (I also think the
risk of joinder of IFIC in the arbitration proceeding is minimal since the
payment bonds I have seen mandate court proceedings rather than arbitration,
however, I have not seen the performance bonds.)

Please consider the above and let me know your response. Needless to say,
IFIC reserves all right to seek recovery of any and all loss, cost or
expense from TriBuilt. The foregoing proposal is an effort to address the
recovery in the pending litigation and arbitration you are handling only.

Jack East III

Ex. C
16 of 26

2725 Cantrell Rd., Ste. 202

Little Rock, AR 72202

501.372.3278

501.376.0949(fax)

Ex. C
17 of 26

| | |
|---|---|
| From: | "Jack East III" <jeastiii@windstream.net> |
| To: | "'Brian Meadors'" <BMeadors@prbslaw.com> |
| CC: | "'Cody Thompson'" <codythompson@hotmail.com> |
| Date: | 3/16/2010 12:05 PM |
| Subject: | RE: another clarification - IFIC and TriBuilt |

Let me assure you that IFIC is not trying to control TriBuilt's relationship with its attorneys. IFIC is trying protect its own subrogation rights, its common law rights as surety and its rights under the General Agreement of Indemnity(GAI) TriBuilt and its owners signed before the bond were posted. I do not have the GAI but I am sure you could get a copy from the Ft. Smith insurance agency that wrote the bonds for TriBuilt.

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)


-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Tuesday, March 16, 2010 11:33 AM
To: Jack East III
Cc: Cody Thompson
Subject: another clarification - IFIC and TriBuilt

Is there a particular portion of the policy(ies) that IFIC has with TriBuilt that allows IFIC to control or dictate terms regarding TriBuilt's relationship with TriBuilt's attorneys? In other words, on what authority is IFIC making these demands? If you could forward me that authority / policy language, it would be helpful in allowing us to respond to your client's proposal.

>>> "Jack East III" <jeastiii@windstream.net> 3/16/2010 11:13 AM >>>
Brian,


I wanted to put this in writing rather than a phone call conversation. International Fidelity Insurance Company(IFIC) proposes the following:


(1) TriBuilt litigation and arbitration to proceed with you as its counsel. IFIC will not object to your fee of 24% of the gross amount of any recovery except the undisputed balance of the retainage. That means you get 24% of any tort recovery in the litigation plus 24% of any change order recovery in the arbitration plus 24% of any recovery of the liquidated damages being asserted by NISHA. (I understand NISHA asserts it is entitled to keep $144,000.00 of the contract balance as liquidated damages.) "Gross amount" means the total amount recovered, including attorney fees awarded in the arbitration, but excluding arbitrator and AAA costs and expenses.

(2) After subtracting your fees and expenses all remaining amounts recovered in court or the arbitration would then be paid, to the extent necessary, to

Ex. C
18 of 26

either the unpaid subcontractors and suppliers of TriBuilt on the NISHA job,
or to IFIC to the extent of its payments to TriBuilt's subcontractors,
suppliers and other bond claimants on the NISHA project or any other IFIC
bonded project on which IFIC suffers a bond loss or losses.

(3) Lastly, but most importantly, a condition of this proposal is that IFIC
be kept out of the court suit and arbitration. Should IFIC be made a party
to either the suit or arbitration this agreement will be null and void. I
think this should be resolved soon in the arbitration.  (I also think the
risk of joinder of IFIC in the arbitration proceeding is minimal since the
payment bonds I have seen mandate court proceedings rather than arbitration,
however, I have not seen the performance bonds.)


Please consider the above and let me know your response. Needless to say,
IFIC reserves all right to seek recovery of any and all loss, cost or
expense from TriBuilt. The foregoing proposal is an effort to address the
recovery in the pending litigation and arbitration you are handling only.


Jack East III

2725 Cantrell Rd., Ste. 202

Little Rock, AR 72202

501.372.3278

501.376.0949(fax)

Ex. C
19 of 26

| From: | Brian Meadors |
| To: | Jack East III |
| CC: | 'Cody Thompson' |
| Date: | 3/16/2010 12:10 PM |
| Subject: | RE: IFIC and TriBuilt |

So, if I understand your client's proposal, if we recover the $114,000, which is not being voluntarily paid to us, then the attorney's fees for recovery of that would be zero. Am I understanding that correctly?

>>> "Jack East III" <jeastiii@windstream.net> 3/16/2010 11:56 AM >>>
The undisputed retainage is the contract balance in NISHA's hands after subtracting liquidated damages from the total retainage. My notes reflect NISHA has $258,000 in retainage. The "undisputed" retainage would, therefore, be $114,000. This amount would be paid by NISHA to someone, regardless of the outcome of the contract disputes between the parties.

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)

-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Tuesday, March 16, 2010 11:22 AM
To: Jack East III
Cc: Cody Thompson
Subject: Re: IFIC and TriBuilt

Jack,
  What do you mean by "undisputed balance of the retainage"?  I ask because my client's don't have any of the retainage, so if it is undisputed, I don't understand why we're having to sue for it.
  I have other issues with IFIC's proposal, but will address those later after I receive this clarification.

>>> "Jack East III" <jeastiii@windstream.net> 3/16/2010 11:13 AM >>>
Brian,


I wanted to put this in writing rather than a phone call conversation.
International Fidelity Insurance Company(IFIC) proposes the following:


(1) TriBuilt litigation and arbitration to proceed with you as its counsel.
IFIC will not object to your fee of 24% of the gross amount of any recovery except the undisputed balance of the retainage. That means you get 24% of any tort recovery in the litigation plus 24% of any change order recovery in the arbitration plus 24% of any recovery of the liquidated damages being asserted by NISHA. (I understand NISHA asserts it is entitled to keep $144,000.00 of the contract balance as liquidated damages.) "Gross amount" means the total amount recovered, including attorney fees awarded in the arbitration, but excluding arbitrator and AAA costs and expenses.

Ex. C
20 of 26

(2) After subtracting your fees and expenses all remaining amounts recovered in court or the arbitration would then be paid, to the extent necessary, to either the unpaid subcontractors and suppliers of TriBuilt on the NISHA job, or to IFIC to the extent of its payments to TriBuilt's subcontractors, suppliers and other bond claimants on the NISHA project or any other IFIC bonded project on which IFIC suffers a bond loss or losses.

(3) Lastly, but most importantly, a condition of this proposal is that IFIC be kept out of the court suit and arbitration. Should IFIC be made a party to either the suit or arbitration this agreement will be null and void. I think this should be resolved soon in the arbitration.  (I also think the risk of joinder of IFIC in the arbitration proceeding is minimal since the payment bonds I have seen mandate court proceedings rather than arbitration, however, I have not seen the performance bonds.)

Please consider the above and let me know your response. Needless to say, IFIC reserves all right to seek recovery of any and all loss, cost or expense from TriBuilt. The foregoing proposal is an effort to address the recovery in the pending litigation and arbitration you are handling only.

Jack East III

2725 Cantrell Rd., Ste. 202

Little Rock, AR 72202

501.372.3278

501.376.0949(fax)

Ex. C
21 of 26

| | |
|---|---|
| **From:** | "Jack East III" <jeastiii@windstream.net> |
| **To:** | "'Brian Meadors'" <BMeadors@prbslaw.com> |
| **Date:** | 3/16/2010 12:24 PM |
| **Subject:** | RE: IFIC and TriBuilt |

Brian,

I respectfully disagree with the premise of your question. Payment of the $114,000 is, I understand, a matter of timing. TriBuilt wants it all right now plus a bunch of money for change order work. NISHA and bank are seeking to retain the money until outstanding subcontractor and supplier lien issues are resolved. You must agree with the fundamental premise that the money is ultimately owed first to the subcontractors and suppliers. You do agree with that, don't you?

With that said, if the arbitrator only awards the $114,000 retainage, then the answer to your question is "yes". (Please also remember that arbitrators have to provide the basis for their award.)

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)

-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Tuesday, March 16, 2010 12:10 PM
To: Jack East III
Cc: 'Cody Thompson'
Subject: RE: IFIC and TriBuilt

So, if I understand your client's proposal, if we recover the $114,000, which is not being voluntarily paid to us, then the attorney's fees for recovery of that would be zero. Am I understanding that correctly?

>>> "Jack East III" <jeastiii@windstream.net> 3/16/2010 11:56 AM >>>
The undisputed retainage is the contract balance in NISHA's hands after subtracting liquidated damages from the total retainage. My notes reflect NISHA has $258,000 in retainage. The "undisputed" retainage would, therefore, be $114,000. This amount would be paid by NISHA to someone, regardless of the outcome of the contract disputes between the parties.

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)

-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Tuesday, March 16, 2010 11:22 AM
To: Jack East III
Cc: Cody Thompson
Subject: Re: IFIC and TriBuilt

Ex. C
22 of 26

Jack,

What do you mean by "undisputed balance of the retainage"?  I ask because my client's don't have any of the retainage, so if it is undisputed, I don't understand why we're having to sue for it.

I have other issues with IFIC's proposal, but will address those later after I receive this clarification.

>>> "Jack East III" <jeastiii@windstream.net> 3/16/2010 11:13 AM >>>
Brian,


I wanted to put this in writing rather than a phone call conversation.
International Fidelity Insurance Company(IFIC) proposes the following:


(1) TriBuilt litigation and arbitration to proceed with you as its counsel.
IFIC will not object to your fee of 24% of the gross amount of any recovery except the undisputed balance of the retainage. That means you get 24% of any tort recovery in the litigation plus 24% of any change order recovery in the arbitration plus 24% of any recovery of the liquidated damages being asserted by NISHA. (I understand NISHA asserts it is entitled to keep $144,000.00 of the contract balance as liquidated damages.) "Gross amount" means the total amount recovered, including attorney fees awarded in the arbitration, but excluding arbitrator and AAA costs and expenses.

(2) After subtracting your fees and expenses all remaining amounts recovered in court or the arbitration would then be paid, to the extent necessary, to either the unpaid subcontractors and suppliers of TriBuilt on the NISHA job, or to IFIC to the extent of its payments to TriBuilt's subcontractors, suppliers and other bond claimants on the NISHA project or any other IFIC bonded project on which IFIC suffers a bond loss or losses.

(3) Lastly, but most importantly, a condition of this proposal is that IFIC be kept out of the court suit and arbitration. Should IFIC be made a party to either the suit or arbitration this agreement will be null and void. I think this should be resolved soon in the arbitration.  (I also think the risk of joinder of IFIC in the arbitration proceeding is minimal since the payment bonds I have seen mandate court proceedings rather than arbitration, however, I have not seen the performance bonds.)


Please consider the above and let me know your response. Needless to say, IFIC reserves all right to seek recovery of any and all loss, cost or expense from TriBuilt. The foregoing proposal is an effort to address the recovery in the pending litigation and arbitration you are handling only.


Jack East III

2725 Cantrell Rd., Ste. 202

Little Rock, AR 72202

Ex. C
23 of 26

501.372.3278

501.376.0949(fax)

Ex. C
24 of 26

| | |
|---|---|
| **From:** | Brian Meadors |
| **To:** | jeastiii@windstream.net |
| **Date:** | 3/17/2010 10:05 AM |
| **Subject:** | proposed - fee arrangement |

I started with the language in your previous email and made modifications.  Here is what we propose.

(1) TriBuilt litigation and arbitration to proceed with Cody Thompson and Brian Meadors ("attorneys") as its counsel.  IFIC will not object to a fee of 24% of the gross amount of any recovery.  That means the attorneys get 24% of any tort recovery in the litigation plus 24% of any change order recovery in the arbitration plus 24% of any recovery of the retainage, plus 24% of any costs or attorney's fee award provided by the arbitrator and/or court. "Gross amount" means the total amount recovered, including attorney fees awarded in the arbitration, but excluding arbitrator and AAA costs and expenses.

(2) The attorneys have the right, after the 24% fee is deducted, to be reimbursed for their reasonable expenses.  After subtracting attorney's fees and expenses all remaining amounts recovered in court or the arbitration would then be paid, to the extent necessary, to either the unpaid subcontractors and suppliers of TriBuilt on the NISHA job, or to IFIC to the extent of its payments to TriBuilt's subcontractors, suppliers and other bond claimants on the NISHA project or any other IFIC bonded project on which IFIC suffers a bond loss or losses.

(3) IFIC reserves all right to seek recovery of any and all loss, cost or expense from TriBuilt. The foregoing proposal is an effort to address the recovery in the pending litigation and arbitration that the attorneys are handling only.

Ex. C
25 of 26

| From: | "Jack East III" <jeastiii@windstream.net> |
| To: | "'Brian Meadors'" <BMeadors@prbslaw.com> |
| Date: | 3/17/2010 1:12 PM |
| Subject: | RE: proposed - fee arrangement |
| Attachments: | TriBuiltgai.pdf |

Brian,

IFIC does not accept your proposal and respectfully requests you reconsider its offer made yesterday. Please review the Second and Third paragraphs of the TriBuilt General Agreement of Indemnity, a copy of which is attached for your reference. May I also respectfully suggest that reliance on an insurance treatise is misplaced when the relevant documents are bonds of suretyship rather than policies of insurance.

Sincerely,

Jack East III
2725 Cantrell Rd., Ste. 202
Little Rock, AR 72202
501.372.3278
501.376.0949(fax)


-----Original Message-----
From: Brian Meadors [mailto:BMeadors@prbslaw.com]
Sent: Wednesday, March 17, 2010 10:06 AM
To: jeastiii@windstream.net
Subject: proposed - fee arrangement

I started with the language in your previous email and made modifications. Here is what we propose.

(1) TriBuilt litigation and arbitration to proceed with Cody Thompson and Brian Meadors ("attorneys") as its counsel. IFIC will not object to a fee of 24% of the gross amount of any recovery. That means the attorneys get 24% of any tort recovery in the litigation plus 24% of any change order recovery in the arbitration plus 24% of any recovery of the retainage, plus 24% of any costs or attorney's fee award provided by the arbitrator and/or court. "Gross amount" means the total amount recovered, including attorney fees awarded in the arbitration, but excluding arbitrator and AAA costs and expenses.

(2) The attorneys have the right, after the 24% fee is deducted, to be reimbursed for their reasonable expenses. After subtracting attorney's fees and expenses all remaining amounts recovered in court or the arbitration would then be paid, to the extent necessary, to either the unpaid subcontractors and suppliers of TriBuilt on the NISHA job, or to IFIC to the extent of its payments to TriBuilt's subcontractors, suppliers and other bond claimants on the NISHA project or any other IFIC bonded project on which IFIC suffers a bond loss or losses.

(3) IFIC reserves all right to seek recovery of any and all loss, cost or expense from TriBuilt. The foregoing proposal is an effort to address the recovery in the pending litigation and arbitration that the attorneys are handling only.

Ex. C
26.536