**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

**TRIBUILT CONSTRUCTION GROUP, LLC**                                      **PLAINTIFF**

**v.**                              **CASE NO. 10-CV-02052 (JLH)**

**INTERNATIONAL FIDELITY INSURANCE
COMPANY**                                                                **DEFENDANT**

**v.**

**ALAN M. HARRISON, GAYE P. HARRISON,
JOSEPH E. MARRONE, STACY M. MARRONE,
and SOUTHLAND ENTERPRISES, LLC**           **THIRD-PARTY DEFENDANTS**

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

Comes the Plaintiff, and submits the following statement of material facts not in dispute, which establish Plaintiff's entitlement to summary judgment:

1. This case arises out of the construction of a hotel in Conway, Arkansas.

2. The owner of the hotel is a company called NISHA, LLC., referred to herein as "Owner."

3. To build the hotel, the Owner hired the Plaintiff, TriBuilt, referred to herein as "Contractor."

4. The Owner and the Contractor entered into a contract to build the hotel for approximately $3.8 million.

5. As part of the agreement, the Contractor was bonded. These bonds would guarantee payment to the subcontractors in the event that the Contractor were unable to pay the subcontractors.

6. The bonds were obtained from the Defendant, International Fidelity Insurance Co., referred to herein as "Bonding Company."

7. Prior to completion of the hotel, the Owner and the Owner's bank signed an agreement stating that the $375,000 "retainage" would be paid to the Contractor once the hotel received a certificate of occupancy and a certificate from the franchisor.

8. Upon that payment, the Contractor would then provide unconditional lien waivers from the subcontractors.

9. A copy of relevant portion of the agreement is included in Plaintiff's moving papers as Exhibit "A." The same portion of the contract is attached to the Plaintiff's complaint in this matter as Exhibit "A."

10. The Contractor completed construction of the hotel.

11. The hotel received a certificate of occupancy from the City of Conway.

12. The hotel received a certificate from the franchisor (Country Inn & Suites) allowing the hotel to operate as a Country Inn & Suites.

13. After completing the hotel, the Contractor, relying upon the agreement set forth in relevant part as Exhibit "A," demanded that the Owner and its bank pay the retainage of $375,000. The Contractor also asked for an additional amount (approximately $290,000) owed from change orders.

14. The Owner and its bank refused to pay.

15. The Contractor needs that final payment to pay subcontractors.

16. The Contractor sued the Owner and its bank. That case is pending, is styled *TriBuilt v. NISHA and Centennial Bank*, Sebastian County, Arkansas, CV-2009-2097, and makes both tort and contract claims.

17. Some of the subcontractors that are owed money have sued the Owner and/or the Contractor. Other subcontractors made claims on the Bonding Company.

18. The Bonding Company is processing claims made by subcontractors.

19. When the Bonding Company properly pays a valid claim submitted by a subcontractor, then the Contractor owes that amount to the Bonding Company.

20. Ultimately, the Bonding Company will have paid a great deal of money to several of the subcontractors, and the Contractor will owe the Bonding Company for the monies properly paid to subcontractors.

21. The Contractor, to be able to satisfy this debt, needs to get the money owed by the Owner and its bank. Because the Owner and its bank have refused to pay the amounts owed to the Contractor, the Contractor resorted to litigation as the only available means of obtaining its money.

22. The Owner and its bank's refusal to pay has put the Contractor in a very difficult financial position. Because over $650,000 is being wrongfully withheld by the Owner and its bank, the Contractor has experienced serious cash flow problems.

23. One of the effects of the cash flow problems is experienced by the Contractor is that is has been unable to pay its attorneys in full as attorneys' fees have been incurred. It is represented in all litigation matters except this one by Cody Thompson and Brian Meadors. Both Mr. Thompson and Mr. Meadors have submitted affidavits in support of this motion (see, Exhibits "E" and "F").

24. Because of the difficulty encountered by Contractor in paying its attorneys' fees, the Contractor and it attorneys negotiated a tentative agreement for fees. Pursuant to that agreement, the parties agreed upon a contingent fee for Contractor's attorneys in the amount of 24% of any recovery that Contractor is able to gain from the Owner and/or its bank. "Recovery" means any monies paid by the Owner or the bank directly to subcontractors after the date of the initial, tentative agreement for attorneys' fees. Costs will then be deducted, and the Contractor shall receive the balance. Of that balance, unpaid subcontractors and the Bonding Company would be paid prior to the Contractor receiving any of the funds. Contractor and its attorneys confirm this tentative contingent fee arrangement in writing. The confirmation of the arrangement for attorneys' fees is submitted as Exhibit "D."

25. The attorney fee percentage was negotiated between the attorneys and Contractor. The 24% was derived from the amounts then owed to the Contractor in consideration of anticipated attorney hours required to obtain a final judgment in favor of Contractor. At the time of the negotiated fee, the parties contemplated that it would require approximately 400 total attorney hours to complete the attorneys' representation of Contractor in the suits involving

payment, although the attorneys believe the estimate is too low based on positions taken by the Owner, its bank and the Bonding Company.

26. The Contractor wants this fee arrangement for several reasons. First, as mentioned above, it allows the Contractor to pursue its claims against the Owner and the Owner's bank, despite the cash flow issues. Second, the Contractor is satisfied with the services provided by the attorneys so far. Third, the attorneys have in-depth knowledge of the case.

27. The case file in this matter currently fills three bankers boxes. There are more than a hundred filings in the Sebastian County case alone. There are multiple, related litigation matters in Faulkner County. The attorneys have already taken five depositions, propounded discovery, responded to discovery, and have filed and responded to more than a dozen motions. There has already been one motions hearing in the case. The trial date is set for October 2010.

28. When the tentative contingency agreement was decided, the Contractor's attorneys expressed concern about possible outcomes. The attorneys were concerned about what would happen if the recovery from the Owner and its bank were, after the 24% and costs are deducted, less than the amount that the Contractor would owe to the Bonding Company. The attorneys were concerned that the Bonding Company would ask the attorneys to disgorge a portion of the attorneys' fees.

29. The attorneys, already concerned about the risk in taking the case on contingency, are unwilling to compound that risk by the possibility of having their fee disgorged by the Bonding Company.

30. To alleviate this concern, the attorneys sent a letter to the Bonding Company. A copy is attached as Exhibit "B."

31. The Bonding Company refuses to agree to the tentative arrangement.

32. The proposed fee agreement would not short-change the Bonding Company. If there were a shortfall, the shortfall would still be owed by the Owner, as is required by the Owner's contract with the Bonding Company. The Bonding Company would still have the right to pursue the Owner for the shortfall. All the proposed fee agreement would do is protect Attorneys Thompson and Meadors's fees from being disgorged if there were a shortfall in the recovery.

33. A copy of the email communications between the attorneys and the Bonding Company's lawyer is attached as Exhibit "C."

34. Typically, in the legal profession, contingent fees range from 1/3 to 40% of the total recovery, whether the action sounds in contract, tort, or otherwise.

35. The 24% arrangement is a lower percentage than the norm for contingent fee contracts.

36. The 24% arrangement proposed by the attorneys may ultimately be less than the attorneys would have charged had they continued to handling Contractor's legal matters on an hourly basis.

37. The Contractor and its attorneys are unaware of any other attorneys who accept representation of this case on terms more favorable than the terms tentatively agreed to by the Contractor's current attorneys.

38. The Contractor's attorneys have requested the Bonding Company and its counsel to identify any competent attorney who would pursue the Contractor's claims on a contingent fee basis more favorable than the 24% arrangement in this case, but the Bonding Company has not identified any attorney in response to that request.

/s/ Rex M. Terry
Rex M. Terry
Arkansas Bar No. 76128
HARDIN, JESSON & TERRY, PLC
5000 Rogers Avenue, Suite 500
P. O. Box 10127
Fort Smith, AR  72917-0127
479-452-2200 - Phone
479-452-9097 - Fax
terry@hardinlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Jack East III, Esq. –   jeastiii@windstream.net
amandaspc@windstream.net

/s/ Rex M. Terry