```
              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF ARKANSAS
                       FORT SMITH DIVISION
```

**TRIBUILT CONSTRUCTION GROUP, LLC**                               **PLAINTIFF**

      **v.**                              **Civil No. 10-2052**

**INTERNATIONAL FIDELITY INS. CO.**                                **DEFENDANT**

**ALAN M. HARRISON, GAYE P. HARRISON,**
**JOSEPH E. MARRONE, STACY M. MARRONE**
**and SOUTHLAND ENTERPRISES, INC.**              **THIRD-PARTY DEFENDANTS**

**O R D E R**

Now on this 19th day of October 2010, comes on for consideration the following motions:

    \* Plaintiff's **Motion for Summary Judgment** (Doc. 16); and

    \* Defendant's **Motion for Partial Summary Judgment** (Doc. 23).

Plaintiff requested oral argument on the parties' cross motions for summary judgment and the Court granted the request. A hearing was held on October 5, 2010, at which time counsel for both plaintiff and defendant presented their arguments to the Court.

The legal issues raised by both summary judgment motions are the same. Thus, the Court will address the motions together.

The Court, having reviewed the parties' papers filed in connection with the pending motions, and being well and sufficiently advised, finds and orders as follows with respect to the same:

-1-

1. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Walsh v. United States*, 31 F.3d 696 (8th Cir. 1994). Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. *See Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995). The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. *See City of Mt. Pleasant, Iowa v. Associated Electric Co-op*, 838 F.2d 268 (8th Cir. 1988).

2. The following material facts are undisputed:

* Plaintiff, Tribuilt Construction Group, LLC (hereinafter called plaintiff or Tribuilt) is a general contractor who was hired to construct a hotel in Conway, Arkansas for a company which, for purposes of this opinion, will be called NISHA or owner, as appropriate. The cost agreed upon for such construction was approximately $3.8 million.

\* NISHA and its bank agreed that a $375,000 "retainage" would be paid to plaintiff once the hotel received a certificate of occupancy and certificate from the franchisor.

\* As part of the agreement between plaintiff and NISHA, plaintiff secured construction bonds from defendant, International Fidelity Ins. Co.

\* The bonds were procured to guarantee payment for the subcontractors and suppliers that plaintiff hired to build the hotel.

\* In connection with obtaining the bonds, plaintiff and its individual owners (Alan M. Harrison, Gaye P. Harrison, Joseph E. Marrone, Stacy M. Marrone and Southland Enterprises, Inc.) -- who are named as third-party defendants herein -- entered into an "Agreement of Indemnity" (the "Indemnity Contract") which provides, in relevant part:

> **TRUST FUND**
> Fourth: The Contractor, the Indemnitors hereby consenting, agrees that all monies due or to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or otherwise, for the benefit of persons performing labor or providing materials for projects covered by the Bonds and for payment for all obligations in connection with act such contract or contracts for which the Surety would be liable under any said Bond, which trust funds also insure to the benefit of the Surety for liability or loss it may have or may sustain under any said Bond, and further agrees to use such money for the purpose of performing the contract and discharging the obligations of the Bond and for no other purpose until the Bond is completely exonerated.

* Plaintiff completed construction of the hotel and received both a certificate of occupancy and a certificate from the franchisor.

* Plaintiff demanded that NISHA pay it the $375,000 retainage -- plus an additional $290,000, allegedly owed from change orders.     * NISHA and its bank have refused to pay the demanded amounts to plaintiff claiming that, since plaintiff did not pay certain subcontractors and suppliers, it could not provide final lien waivers to NISHA. NISHA also disputes that it owes $290,000 for change orders.

* Plaintiff claims that it cannot pay its subcontractors because NISHA is withholding the retainage and the payments for the work orders.

* Many of the subcontractors have made claims against the bonds provided by defendant and it appears that defendant has received claims against plaintiff's bonds in excess of $500,000.

* Defendant has paid some of the subcontractors' claims and is currently processing additional claims.

* Plaintiff filed suit against NISHA and its bank in state court seeking to recover from NISHA and/or its bank the $375,000 retainage, plus the additional $290,000 plaintiff claims it is owed for change orders.

\*   The contract claims in the state court case commenced by plaintiff have been sent to arbitration and only the tort claims are proceeding to trial.

3.   Plaintiff represents that it has entered into an tentative agreement with its attorneys concerning its efforts to pursue recoveries against NISHA and its bank -- which agreement provides that plaintiff's attorneys will receive a 24% contingency fee on any money judgment plaintiff obtains in the state court case.

Plaintiff filed this lawsuit because it allegedly does not have the money to pay its attorneys to pursue NISHA and its bank in the state court case -- and seeks herein a declaratory judgment that "the 24% contingency arrangement proposed by the Plaintiff's attorneys is fair and reasonable" and that defendant is "required to honor the contingent fee arrangement so that Plaintiff's attorneys are not required to disgorge fees at a later date."

4.   Defendant has filed a counterclaim against plaintiff and third-party defendants Alan M. Harrison, Gaye P. Harrison, Joseph E. Marrone, Stacy M. Marrone and Southland Enterprises, Inc. (the "Indemnitors" under the Indemnity Contract) seeking repayment for monies it has paid out under the bonds.

5.   At the October 5th hearing, plaintiff's attorneys expressed their primary concern to be that any state court judgment which might be obtained by plaintiff will not be sufficient to pay

everyone who is owed by plaintiff. Specifically, they worry that there will not be enough to re-pay defendant for the monies it has outlaid pursuant to its bonding obligations; and/or to pay the remaining unpaid subcontractors and suppliers; and/or -- most importantly -- to pay them (plaintiff's attorneys) for the fees they will earn in securing the recovery.

Plaintiff's attorneys take the position that, because they are doing the work to obtain a judgment against NISHA and its bank, defendant should be obligated to reduce its share of any recovery by the 24% contingency fee to which plaintiff has agreed.

In addition, plaintiff's attorneys conceded at the hearing that -- if, pursuant to their agreement with plaintiff, they be allowed to take a 24% fee off the top of any judgment they obtain in state court -- the unpaid subcontractors and suppliers would also be paying their pro rata share of plaintiff's attorneys' fees.

6. Plaintiff's argument that its attorneys should be entitled to take a 24% fee off the top of any judgment that plaintiff obtains in the state court case is said to be premised on concepts of fairness and the "common fund doctrine."

Specifically, plaintiff says that it "is simply not fair" for defendant to obtain the benefit from plaintiff's attorneys' efforts without contributing toward plaintiff's attorneys' fees. Plaintiff argues that, if defendant does not have to contribute to plaintiff's attorneys' fees, defendant will be unjustly enriched.

7. Plaintiff further asserts that, under the "common fund doctrine," the Court should hold that any recovery that plaintiff obtains in the state court case is a "common fund" that plaintiff created for the benefit of defendant and, as such, plaintiff should be allowed to charge the alleged "common fund" with plaintiff's attorneys' fees.

8. Defendant concedes that 24% is a reasonable attorneys' fee, but asserts that defendant has no obligation to pay plaintiff's attorneys just because plaintiff had to file a lawsuit to get the money to repay defendant.

Defendant states that it has superior rights under principles of equitable subrogation, and pursuant to the Indemnity Contract, to any money that plaintiff recovers from NISHA in the state court case.

To support its position, defendant cites to the provision of the Indemnity Contract in which plaintiff agreed that "all monies due" under its contract with NISHA would be used "for the purpose of performing the contract and discharging the obligations of the Bond and for no other purpose until the Bond is completely exonerated." Defendant asserts that, pursuant to this provision, all contract receivables are trust funds for the benefit of the plaintiff's subcontractors, suppliers and defendant until the bond is exonerated. Defendant argues that, for this reason, plaintiff

cannot assign away the trust *res* to the prejudice of its beneficiaries.

9.  At the outset, the Court notes that plaintiff has not cited to any case in which a court has applied the common fund doctrine to a case where a written contract exists that distributes the risks among the parties involved.

Indeed, most cases involving the common fund doctrine, including the cases that plaintiff cites, are in the context of class actions or shareholder derivative lawsuits.

For example, *Millsap v. Lane*, 288 Ark. 439, 442 (1986), which is cited by the plaintiff, is a shareholder derivative action.  In that case, the Arkansas Supreme Court held that "[t]he American rule and the rule observed in Arkansas are that attorney fees are not chargeable as costs in litigation unless specifically permitted by statute."  *Id.* (citation omitted).

An exception exists "where a plaintiff has created or augmented a common fund or where assets have been salvaged for the benefit of others as well as himself."  *Millsap*, 288 Ark. at 442. "In such a situation, to allow the others to obtain the full benefit from the plaintiff's efforts without requiring contribution or charging the common fund for attorney fees would be to enrich the others unjustly at the expense of the plaintiff."  *Id.* (citation omitted).

In another case decided by the Arkansas Supreme Court, the court explained the purpose for the common fund doctrine as follows:

> [w]hen many persons have a common interest in a fund, and one of them for the benefit of all brings a suit for its preservation, and retains counsel at his own cost, a court of equity will order a reasonable amount paid to him out of the funds in the hands of the receiver in reimbursement of his outlay.

*Crittenden County v. Williford*, 283 Ark. 289 (1984).

In that case, a taxpayer brought suit on behalf of the county against the sheriff for misappropriation of funds. The plaintiff was successful and sought to be reimbursed his attorney's fees from the monies he had recovered for the benefit of the county and its taxpayers.

The chancellor held that the case -- which he likened to a class action suit -- had benefitted all taxpayers of the county and that the plaintiff was entitled to be reimbursed his attorneys' fees from the monies recovered. The Arkansas Supreme Court affirmed.

10. At first blush, the common fund doctrine might seem to apply to the present facts. However, upon a closer examination, the Court finds that it would be inappropriate to apply the doctrine to the facts of this case.

11. This case is more analogous to the facts of a decision by the Arkansas Court of Appeals in *Sparks Regional Medical Center v. Blatt*, 55 Ark. App. 311 (1996). In that case, an attorney filed a

lawsuit on behalf of his client against an insurance company to recover medical expenses the insurance company had refused to pay on the client's behalf. That case was filed in federal court and was presided over by the undersigned. *See Bell v. Health Management Associates, Inc.,* Case No. 91-cv-2215.

In *Bell*, the attorney settled the case for the exact amount owed to the medical providers. However, a dispute arose over who should be named as payees on the settlement check and the insurance company interpled the funds into the registry of the court. This Court held that the money in question was properly characterized as "insurance proceeds" and, because the plaintiff had executed viable assignments of any insurance proceeds received to the medical providers, the entire settlement should go to the medical providers. The Eighth Circuit affirmed.

The attorney fee issue was not before either this Court or the Eighth Circuit in *Bell*. However, plaintiff's attorney in *Bell* subsequently sued the medical providers in state court asserting that he was entitled to a reasonable attorney's fee "for securing payment" for the benefit of the medical providers.

The Arkansas State Circuit Court agreed and held that the medical providers were unjustly enriched -- granting summary judgment in the attorney's favor and ordering the medical providers to pay their pro rata share of the attorneys' fee to the plaintiff's attorney.

The Court of Appeals reversed the lower court holding, stating that "any enrichment enjoyed by the [medical providers] was not unjust." *Sparks,* 55 Ark. App. at 319. Explaining its ruling, the court stated:

> as creditors, the appellants were entitled to their recovery and they were not, in some equitable sense or otherwise, bound to restore it. There was no operative act, intent, or situation on the part of the appellants to make the enrichment unjust, and, as just discussed, their *failure* to act is an unsatisfactory basis for this theory of recovery. (internal citation omitted). The contingency-fee arrangement was executed with Bell, not the appellants; thus, the appellee had no reasonable expectation of payment from the appellants. (internal citation omitted). The appellants cannot be considered at fault for not intervening in the federal lawsuit prior to the interpleader action; in fact, they were well within their legal rights to stand aside while the appellee and his client initiated the suit, even though the appellants stood to gain from it as well. (internal citation omitted).

This Court believes the forgoing analysis has application in this case. As the surety and under its bonding arrangements with plaintiff, defendant is entitled to be repaid for the amounts that it has paid and/or will pay to subcontractors and suppliers on plaintiff's behalf. Nothing is shown to suggest that defendant has engaged in any activity nor exercised any contractual right which would cause it to be "unjustly enriched" by being repaid.

Further, defendant's decision not to file a lawsuit against NISHA does not provide an appropriate basis to conclude that defendant will be unjustly enriched if plaintiff recovers any money from NISHA and repays defendant. As defendant's counsel stated at

the hearing, defendant has been attempting to negotiate a settlement with NISHA and its bank and it was well within its legal rights to stand aside while plaintiff initiated the state court action, even though defendant stands to gain from it as well.

The Court further notes that the tentative contingency-fee arrangement was executed between plaintiff and its attorneys after it came to appear (1) that plaintiff would not be able to pay its obligations; and (2) that plaintiff would not be able to finance the needed litigation which might enable it to do so.  Since defendant is not a party to the agreement, there is nothing to suggest that either plaintiff or its attorneys had a reasonable expectation that defendant would agree to contribute to plaintiff's attorneys' fees or that it could be forced to do so by reason of any contractual arrangement.  Indeed, plaintiff's counsel admitted at the hearing that they were originally engaged on an hourly basis and it was only later that they decided to enter into the proposed 24% contingency fee agreement.

12.  Plaintiff has not pointed to any provision of the construction bonds or the Indemnity Contract that would obligate defendant to contribute to plaintiff's attorneys' fees in the state court case.  To the contrary, as noted *supra*, the Indemnity Contract provides that any money plaintiff receives from NISHA and its bank under their contract shall be used "for the purpose of

performing the contract and discharging the obligations of the Bond and for no other purpose until the Bond is completely exonerated."

Plaintiff concedes that the bonds have not been exonerated. Thus, there is no basis, in equity or in the contract, for this Court to declare that plaintiffs' attorneys can take a 24% fee off the top of any judgment that plaintiff recovers from NISHA and/or its bank in the state court case.

It follows, therefore, that the Court will deny plaintiff's motion for summary judgment; will grant defendant's motion for partial summary judgment; and will dismiss plaintiff's complaint for declaratory relief.

13. Finally, the Court notes in passing that, under its contract with NISHA, it would appear that plaintiff is entitled to recover its reasonable attorney fees, costs and expenses if it prevails on its contract claims that are currently pending in arbitration. Thus, in fact, there appears to already be in place a provision whereby the attorneys can be paid if they are successful for plaintiff in arbitration.

**IT IS THEREFORE ORDERED** that Plaintiff'S **Motion for Summary Judgment** (Doc. 16) is **DENIED;** and

**IT IS FURTHER ORDERED** that Defendant's **Motion for Partial Summary Judgment** (Doc. 23) is hereby **GRANTED.** Plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE.**

The Court notes that defendant's counterclaims and third-party claims are still pending in this case and the Court's ruling herein does not resolve those claims.  This case is set for a bench trial for April 5, 2011.

**IT IS SO ORDERED.**

                                          **/s/JIMM LARRY HENDREN**
                                          **JIMM LARRY HENDREN**
                                          **UNITED STATES DISTRICT JUDGE**